**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**JOSE RENTAS,**

      **Plaintiff,**

**v.**                                 **Case No. _____**

**U-HAUL CO. OF VIRGINIA,**
**dba U-Haul Co. of Tidewater,**
**dba U-Haul Company of Tidewater,**
**dba U-Haul Co. of Tidewater Virginia,**

**U-HAUL INTERNATIONAL, INC.,**

**and**

**AMERCO,**

      **Defendants.**

## COMPLAINT

The Plaintiff, Jose Rentas, by counsel, files this Complaint and demands judgment against Defendants on the following grounds and in the following amounts:

## INTRODUCTION

1.      This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC § 2000e *et seq.* ("Title VII") for unlawful discrimination on the basis of sex, male.  U-Haul held male and female employees to different performance and conduct standard, favoring female employees and adversely affecting the terms and conditions of employment of male employees including Plaintiff, and ultimately leading to the unjustified discharge of male employees including Plaintiff.

**PARTIES**

2.      Joes Rentas ("Rentas") is an individual residing in the City of Virginia Beach, Virginia.

3.      U-Haul Co. of Virginia is a corporation organized and existing under the laws of the Commonwealth of Virginia, having its principal place of business of the City of Portsmouth, Virginia,  and conducting business operations in places including but not necessarily limited to this District and including but not limited to 5609 Raby Road in Norfolk, Virginia ("the Raby Road U-Haul").  U-Haul Co. of Virginia does business under names including but not necessarily limited to "U-Haul," "U-Haul Co. of Tidewater," "U-Haul Company of Tidewater," and "U-Haul Co. of Tidewater Virginia."  In a letter dated January 24, 2019 from Lisa Williams ("Williams") as the Human Resources Representative for U-Haul International, Inc. to the United States Equal Employment Opportunity Commission in response to charge of discrimination number 437-2019-00136 filed by Harry Harless, Williams represented that "U-Haul Company of Tidewater" is a "division" of U-Haul International, Inc.  According to the 2018 Annual Report of AMERCO, U-Haul Co. of Virginia is one of the consolidated subsidiaries of U-Haul International, Inc.

4.      U-Haul International, Inc. is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business in the State of Arizona, and conducting business operations in places including but not necessarily limited to this District and including the Raby Road U-Haul.  U-Haul International, Inc. is a subsidiary of AMERCO.  U-Haul International, Inc. does business under names including but not necessarily limited to "U-Haul."

2

5. AMERCO is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business in the State of Nevada, and conducting business operations in places including but not necessarily limited to this District and including the Raby Road U-Haul. AMERCO does business under names including but not necessarily limited to "U-Haul."

6. At all times relevant to this lawsuit, U-Haul Co. of Virginia, U-Haul International, Inc., and AMERCO each exercised supervision and control over the operation and management of the Raby Road U-Haul.

7. U-Haul Co. of Virginia, U-Haul International, Inc., and AMERCO were joint employers of Harless, Rentas, and the other U-Haul employees mentioned in this Complaint.

8. As used herein, "U-Haul" refers individually and collectively to U-Haul Co. of Virginia, U-Haul International, Inc., AMERCO, an all parent, subsidiary, and affiliated business entities participating at times relevant to this lawsuit in the operation and management of the Raby Road U-Haul.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331(federal question) and 42 U.S.C. § 2000e-5 (Title VII of the Civil Rights Act of 1964).

10. Venue is proper in this District pursuant to 42 U.S.C. § 2000e–5(f)(3) because the unlawful employment practices described herein occurred in this district, the employment records relevant to those practices are maintained in this district, and Plaintiff would have worked in this district but for those unlawful employment practices, and under 28 U.S.C. § 1391(b)(ii) because Defendant(s) transact business in this district, Plaintiff was employed by

Defendant(s) in this district, and most of the actions complained of herein took place within this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     On or about October 2, 2018, Rentas filed charge of discrimination number 437-2019-00019 (Exhibit 1) ("EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), and U-Haul received a copy of it a short time thereafter.

12.     On or about September 11, 2019 the EEOC issued to Plaintiff a Notice of Right to Sue on the EEOC charge (Exhibit 2).

13.     This action was filed within 90 days of Plaintiff's receipt of the aforementioned Notice of Right to Sue.

14.     Plaintiff has satisfied all procedural prerequisites for the filing of this action.

## FACTS

15.     One employee of U-Haul who worked at the Raby Road U-Haul during the times relevant to this lawsuit was Mr. Harry Harless ("Harless").

16.     Harless is male.

17.     Harless began employment with U-Haul at the Raby Road facility in 2007 as a mechanic, worked his way up to shop foreman, held that position at all times relevant to this lawsuit, and was discharged by U-Haul on September 21, 2018.

18.     At all relevant times during his employment with U-Haul, Harless met the legitimate performance expectations of U-Haul.

19.     Another employee of U-Haul who worked at the Raby Road U-Haul during the times relevant to this lawsuit was Mr. Jose Rentas ("Rentas").

20.     Rentas is male.

4

21. Rentas was employed by U-Haul as a pre-inspection specialist at the U-Haul Raby Road facility.

22. Rentas worked for U-Haul from September 16, 2000 until he was discharged by U-Haul on September 21, 2018.

23. At all relevant times during his employment with U-Haul, Rentas met the legitimate performance expectations of U-Haul.

24. At all times relevant to this lawsuit, the manager of the Raby Road U-Haul was Mr. Steve Ivey ("Ivey").

25. At all times relevant to this lawsuit, Harless and Rentas, as employees of U-Haul, reported directly to Ivey.

26. In or about January of 2018, U-Haul hired Ms. Kaitlyn Mitchell ("Mitchell") to work in the parts department of the Raby Road U-Haul.

27. Mitchell is female.

28. Mitchell, as an employee of U-Haul, was a subordinate of Harless.

29. Mitchell frequently did not meet the legitimate job performance expectations of U-Haul.

30. Mitchell regularly used profanity while working at U-Haul and while at the U-Haul Raby Road facility, especially the words "fuck" and "bitch."

31. Employees at the U-Haul Raby Road facility, including but not limited to Harless, Rentas, and Mr. Gary Kimney ("Kimney"), who worked with Rentas as a pre-inspection specialist, found Mitchell's language extremely offensive and complained to Ivey about Mitchell's frequent use of profanity.

5

32.     Although Ivey and U-Haul generally did not tolerate profanity by male employees of Defendant, Ivey and U-Haul tolerated it by Mitchell, and took no corrective action to curtail Mitchell's regular use of profanity at work, because Mitchell is female.

33.     After Kimney complained to Ivey about Mitchell's profanity but afterward saw no change in Mitchell's behavior, Kimney began taking his lunch breaks outside the normal schedule in order to avoid being subjected to Mitchell's profanity.

34.     In March or April of 2018, Rentas complained to Ivey about Mitchell's use of profanity at work.  Ivey told Rentas that Ivey would address it, but Ivey did not do so because Mitchell was female.  Thereafter Rentas, seeing no change in Mitchell's behavior, began taking his lunch breaks outside the normal schedule in order to avoid being subjected to Mitchell's profanity.

35.     In June or July of 2018, Rentas again complained to Ivey about Mitchell's profanity.  Ivey acknowledged Ivey was aware of Mitchell's conduct, and told Rentas that he (Ivey) would take action to correct her behavior.  Ivey, however, did not do so, because Mitchell is female, and Mitchell's profanity at work continued.

36.     Rentas also complained to Harless, as shop foreman, about Ivey's profanity. Harless informed Ivey of the complaints, but Ivey took no corrective action, because Mitchell is female.

37.     Mitchell was highly resistant to supervision, and repeatedly demonstrated insubordination and disrespect, including profanity, toward supervisors including Harless.

38.     Although Ivey and U-Haul generally did not tolerate insubordination and disrespect by male employees of U-Haul, Ivey and U-Haul tolerated it by Mitchell, and took no corrective action to curtail Mitchell's insubordination and disrespect, because Mitchell is female.

39. One example of Mitchell's resistance to supervision and her insubordination and disrespect toward supervisors is an incident that occurred in April 2018. On that date, Harless observed that Mitchell was sitting at the preventive maintenance line, where she was speaking with her boyfriend at the time, Mr. Anthony Moore ("Moore"), who was on duty and whose job it was to maintain the vehicles at the Raby Road U-Haul. Harless saw that Mitchell was distracting Moore from his job duties, so Harless directed Mitchell to leave the preventive maintenance line area and go to the breakroom. In response, Mitchell used profanity toward Harless. This was heard by Mr. Steve Watts ("Watts"), who was a U-Haul mechanic working nearby. Ivey was out of town that day, but Harless reported the incident to Ivey as soon as Ivey returned. Ivey, who already was aware aware of Mitchell's insubordination and disrespect, told Harless, "okay, I will have to get rid of her." Ivey then spoke to Watts, who confirmed the incident. Ivey, however, did not fire Mitchell, or take corrective action of any kind, nor did anyone else in U-Haul management.

40. About two weeks after Mitchell used profanity toward Harless for directing her to leave the preventive maintenance line and finish her break in the breakroom, Mitchell responded to Harless supervising her by calling Harless an "asshole," telling him "fuck you," and locking him out of the parts room. Watts witnessed this incident. Ivey was out of town at the time, so Harless called Ivey and reported the incident to him. Ivey told Harless that Ivey would deal with it when he (Ivey) returned. Ivey, however, did not discipline Mitchell, nor did anyone else in U-Haul management.

41. Ivey did not tolerate insubordination from male employees, but he took no action against Mitchell because he knew Mitchell interpreted every exercise of supervisory authority by a male as sexist intimidation and repression, and that she interpreted every perceived lack of

cordiality or respect by a male as misogynistic.  He correctly feared that disciplining her would lead her to accuse him of sex discrimination and harassment.   He also knew from experience that any such accusation by Mitchell would be accepted as true by U-Haul, regardless of how baseless or unfounded it was.  Therefore, he correctly expected that taking appropriate disciplinary action against Mitchell would have adverse consequences for his employment, and so he allowed her inappropriate conduct to go unchecked.

42. Unlike Ivey, Harless treated Mitchell exactly like he treated every other employee of U-Haul, which led to Mitchell retaliating against Harless by making repeated baseless and malicious complaints against Harless to Ivey.

43. Harless' used the same tone is speaking to each of his subordinates.  His tone and manner of speaking were not harsh, but were direct and to-the-point, which was well suited to the work environment at the Raby Road U-Haul and is part of what had led to him being made shop foreman.  Before June of 2018, none of his subordinates complained to U-Haul management about Harless' manner of speaking.

44. In June of 2018, Mitchell falsely complained to Ivey that Harless spoke to her in a "harsh tone."  Shortly thereafter, Ivey informed Harless of the complaint.  Ivey knew the complaint was baseless.  However, because Mitchell is female, Ivey directed Harless to soften his manner of speaking with Mitchell.  Harless complied.

45. About two weeks later, Mitchell again falsely complained to Ivey that Harless spoke to her in a "harsh tone" and that Harless was disrespecting her.  Shortly thereafter, Ivey informed Harless of the complaint.  Ivey knew this complaint, like Mitchell's previous complaint, was baseless, and therefore Ivey did not direct Harless to modify his manner of

speaking. Instead, Ivey suggested to Harless that Harless have a witness present whenever Harless spoke with Mitchell.

46.     About a week later (in early or mid July 2018), Ivey and Harless were walking together at the Raby Road U-Haul, and they observed Mitchell's car parked in a parking spot at the facility reserved for management. Ivey directed Harless to tell Mitchell to move it. Harless reluctantly complied. When Harless told Mitchell to move her car, Mitchell cursed at him. Mitchell then made yet another false complaint about Harless to Ivey. Ivey then told Harless that Mitchell had again complained that Harless spoke harshly to her. Harless denied he had spoken inappropriately to Mitchell, informed Ivey that Mitchell cursed at Harless when Harless directed her to move her car, and told Ivey that Ivey needed to do something to address Mitchell's insubordinate and disrespectful behavior. Ivey cautioned Harless to "watch yourself" around Mitchell.

47.     The Raby Road facility closes at 4:00 PM, and most employees leave then. Because Harless was shop foreman, he often continued to work after 4:00 PM. On July 16, 2018 at approximately 4:30 PM, Harless was in the parts department looking for a business record. Mitchell had left for the day. While looking through a stack of papers next to the parts department computer terminal, he found two pages of handwritten notes by Mitchell full of false, disparaging, hypersensitive and irrational statements allegedly describing Harless' interactions with Mitchell. He was surprised and shocked by what Mitchell wrote. For example, one entry was:

> 7/1/18  10:45  Walks past me to Gene whom is busy with emails
> and DET to ask for a key cut, even though I said I could cut it
> (Sexist)

Another entry was:

9

> 7/13/18  1:50 PM  Going around telling my coworkers I did
> something (panel misdelivery) that he did.  Slander and defamation
> of character.  Reported to Steve Ivey.

Another entry was:

> 7/16/18  9:30 AM  leaning over counter intimidatingly while
> Bobby Benton was explaining  business and rims for trailers to me.
> Said nothing but glared at me.  After every time I've tried to
> correct the behavior and have gone to my supervisors its gotten
> worse!!

48.     Harless went home, and then at a little after 5:00 PM called Ivey at home.  He informed Ivey of the document, told him the accusations in it were untrue, and asked Ivey what to do. Ivey told Harless not to worry about it.  Harless and his wife then went back to the parts department, photographed the document, and left.  Harless never said anything to Mitchell about the handwritten document, and never attempted to retaliate against her in any way.

49.     After finding the Mitchell Document, Harless treated Mitchell much better than he treated other employees, because he feared being the subject of any more of her baseless, manipulative and vindictive complaints.

50.     In the next few months, Harless asked Mitchell several times if everything was okay between them.  Each time, she said yes.

51.     Throughout this time, Mitchell continued to use profanity and spoke about personal sexual matters which coworkers found offensive.  In July or August of 2018 Kimney again complained to Ivey about Mitchell's behavior, but Ivey, as before, did nothing.

52.     Several months went by, and Harless came to believe that he would not be subjected to any further attacks by Mitchell so long as he avoided upsetting her in any way.

53.     Ms. Samantha Hopkins ("Hopkins") is an officer and employee of U-Haul Co. of Virginia, and an agent of U-Haul.

54.     On Tuesday, September 18, 2018, Harless overheard Mitchell tell a coworker, Mr. Ralph E. "Gene" Kidd ("Kidd"), that Hopkins was the new "marketing company president," and that the company would be run better now that a woman was in charge. Harless did not care whether the marketing company president was male or female.  However, Harless had not been told that a new marketing company president had been appointed, and it upset him that he heard about the appointment from a subordinate before he heard about it from Ivey.  Mitchell noticed that Harless was displeased, and incorrectly assumed his displeasure was due to the fact that Hopkins is female.

55.     Later that day (Tuesday, September 18, 2018), Mitchell, Rentas, Watts, and U-Haul employee Mr. Larry Spencer ("Spencer") were in the breakroom taking their lunch break. Harless was not present.  Mitchell stated Harless was going to be upset because the new marketing company president was female.  Rentas, however, knew Harless would not care about the gender of the new marketing company president or any other U-Haul executive or employee, and correctly concluded Mitchell had misinterpreted something said or done by Harless because of Mitchell's propensity to view actions by males as sexist and misogynistic.  At some point during the conversation, Mitchell began secretly recording the conversation using her cell phone, and she later gave a three minute portion of the recording to U-Haul management.  That portion of the recording began with Mitchell saying "I enjoy lunchtime hearing about how terrible females are, it's great, thanks guys."  Before that, however, no one in the breakroom had said anything to the effect that females are terrible, nor had they said anything negative about females.  Rentas interpreted Mitchell's "thanks guys" sarcastic remark as an instance of the negative and unpleasant behavior for which Mitchell had a well-deserved reputation at the Raby Road U-Haul, and can be heard laughing in the background.  Mitchell then said, "I think bad

people are just bad people and crappy people are just crappy people whether or not you have male genitalia or female genitalia...."  During her "genitalia" remark, Rentas said, "What about that James Brown song ... This is a Man's World," a reference to the song by James Brown, It's a Man's Man's Man's World).  In doing so, Rentas was trying to affirm the equal importance of men and women, by reference to the initial lyrics of that song which state, "this is a man's world, but it wouldn't be nothing, nothing without a woman or a girl."  Mitchell says and did absolutely nothing at that time to indicate she found Rentas' statement offensive.  The recording continued with conversation in a normal tone, when Mitchell says, also in a conversational tone, "But female [unintelligible] from Adam's rib to be by his side not to be under him or beneath him, so if you want to go that route.... We aren't beneath you in a caste system, we're your equals."  No one, however, had said anything about females being "under" or "beneath" males, or about any kind of "caste system."  Mitchell made these statements because she has a propensity to interpret virtually everything a male says or does, no matter how innocuous, as reflecting sexism and misogyny.

56.     Later that day, Rentas informed Harless that Rentas heard Mitchell say Harless was going to be upset because the new marketing company president was female.  Harless then sought out Mitchell, and explained to her that he did not care about the gender of U-Haul executives, but that he had been upset because he felt Ivey should have told him that a new marketing company president had been appointed before he heard it from U-Haul staff.  Mitchell replied, "I read what I want," and told Harless that she "hates" him.  Harless asked Mitchell why she felt that way.  Mitchell told Harless that she felt "screwed" because she is not "a man with genitals between my legs."

12

57.     On September 18, 2018 or September 19, 2018, Mitchell lodged complaints against Harless and Rentas with James P. Blair, also known as Jim Blair ("Blair").  Mitchell gave Blair what has been described as a "28 page complaint" against Harless, and a three minute partial recording of her September 18, 2018 conversation with Rentas in the break room.  At all relevant times, Blair was a director and employee of U-Haul Co. of Virginia, and was an agent of U-Haul participating in the operation and management of the Raby Road U-Haul.  In a letter dated January 24, 2019 from Lisa Williams as the Human Resources Representative for U-Haul International, Inc. to the United States Equal Employment Opportunity Commission in response to charge of discrimination number 437-2019-00136 filed by Harry Harless, Williams represented that Blair was  "the Area District Vice President with responsibility over the Norfolk Shop.  On Blair's LinkedIn page (www.linkedin.com/in/jim-blair-1252b6168), Blair identifies himself as the "Area District President at U-Haul of Virginia and North Carolina."

58.     On Thursday, September 20, 2018, Ivey asked Rentas whether Rentas had made any "inappropriate statements" in the breakroom.  Ivey said nothing about the day or time period in question, said nothing about Mitchell, and said nothing about the conversation Rentas had with Mitchell on September 18 in the breakroom.  Rentas had no idea what Ivey was referring to, and Ivey would not tell him, so Rentas truthfully replied that he had not.  Rentas had no idea why Ivey asked him that question.

59.     Harless first learned of Mitchell's new complaint against him (Harless) on Thursday, September 20, 2018. On that day Blair was at the Raby Road U-Haul, and was speaking with Ivey and Harless about various matters.  At one point in the conversation, Blair played the recording of Mitchell's conversation with Rentas, but Harless could understand almost nothing of what was on it.  Later in that conversation, Blair asked Harless to explain why

13

Mitchell had submitted a "28 page complaint" about Harless' "harsh tone" and "body language." Harless had no idea what "28 page complaint" Blair was referring to, and told Blair so. Blair refused to explain, share any specific accusations, or provide Harless with a copy of the complaint. Blair told Harless that Harless should speak to Mitchell as nicely as Harless spoke to Gene Kidd. Harless informed Blair that Harless spoke to Mitchell better than he spoke to Kidd. Blair told Harless that Blair thought Harless should be be fired because of Mitchell's complaint, but would not tell Harless anything about Mitchell's accusations.

60.     On Friday, September 21, 2018, Ivey, acting pursuant to order by Blair, fired Rentas as soon as Rentas arrived a work. Rentas asked Ivey why he was being fired, and Ivey stated it was because of his conversation in the lunchroom with Mitchell. Rentas had no idea what Ivey was referring to. U-Haul gave Rentas no prior notice, and no opportunity to respond to Mitchell's complaint against him.

61.     On Friday, September 21, 2018 at around 9:30 AM, Hopkins came to the Raby Road U-Haul. Hopkins asked Harless to respond to the purported 28 pages of accusations by Mitchell, but Mitchell would not tell Harless what Mitchell's accusations were, and would not provide a copy of them to Harless. Harless informed Hopkins that he had no idea what accusations Mitchell was making against him. This meeting lasted no more than about three minutes, and then Hopkins left.

62.     On Friday, September 21, 2018 at around noon Harless went to Ivey and asked him what was happening. Ivey told Harless that Blair ordered Ivey to fire Harless effective immediately because Harless' "harsh tone" and "body language" were "not acceptable to women."

14

63.     Harless immediately called Blair to ask him why he ordered Ivey to fire him. Blair stated, "this is a woman's world today and the way everything is going down to survive we need to just eliminate the problem."

64.     By the conduct described above, U-Haul deliberately discriminated against Harless and Rentas on the basis of sex, male.   U-Haul held Mitchell to entirely different standards of conduct and performance that it held Harless, Rentas, and male employees generally.  U-Haul tolerated misconduct by Mitchell that it would not tolerate by Harless, Rentas, and male employees generally.  U-Haul dismissed Harless and Rentas because of Mitchell's false complaints against them without first giving Harless or Rentas a meaningful opportunity to response to Mitchell's complaints and without regard to whether her complaints were justified or supported by facts gathered through reasonable investigation, while at the same time ignoring numerous well-founded complaints against Mitchell.

65.     U-Haul is a national and well-established company with vast resources and training for compliance with federal laws prohibiting unlawful discrimination, and was consciously  aware that its disparate treatment of Harless and Rentas unlawfully discriminated against them on the basis of sex, male.  U-Haul dismissed Harless and Rentas with actual malice, willfully, and in reckless disregard for their federally protected rights.

**COUNT 1**

**DISCRIMINATION IN VIOLATION OF TITLE VII**

1.     The allegations set forth elsewhere in this Complaint are incorporated into this Count by reference as if fully set forth herein.

15

2.      U-Haul, by the actions described herein, intentionally discriminated against Plaintiff on the basis of sex, male, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

3.      As a direct and proximate result thereof, Plaintiff has suffered and continues to suffer loss of wages and employee benefits; and suffered and continues to suffer great inconvenience; has incurred and continues to incur pecuniary expenses; has suffered and continues to suffer injury to reputation; and has suffered and will continue to suffer mental and emotional distress including but not necessarily limited to humiliation, embarrassment, anger, outrage, anxiety, nervousness, sadness, depression.

WHEREFORE Plaintiff demands judgment against each Defendant, jointly and severally, and as relief demands the following:

a.      Back pay in an amount to be determined at trial;

b.      Reinstatement, with pay and benefits Plaintiff would have now had Plaintiff not been dismissed, or in the alternative, front pay in an amount to be determined at trial;

c.      Pecuniary damages in an amount to be determined at trial;

d.      Compensatory damages in the amount of 500,000 or such other amount as may be proven by the evidence at trial;

e.      Punitive damages in the amount of 500,000 or such other amount as may be proven by the evidence at trial;

f.      Nominal damages, if appropriate;

g.      A declaratory judgment finding U-Haul violated Title VII by its actions described above;

16

h.      Preliminary, temporary and permanent injunctive prohibiting U-Haul from future discrimination against males on the basis of sex, and requiring U-Haul to implement appropriate policies and procedures to ensure future Title VII compliance;

i.      Pre-judgment interest;

j.      Post-judgment interest;

k.      Plaintiff's costs and expenses incurred herein including but not limited to expert witness fees and reasonable attorney's fees; and

l.      Such other and further relief as the interests of justice may require.

Plaintiff demands TRIAL BY JURY.

JOSE RENTAS

By: _____
Of Counsel

Raymond L. Hogge, Jr.
VSB No. 29445
Counsel for Jose Rentas
Hogge Law
500 E. Plume Street, Suite 800
Norfolk, VA 23510
Tel: (757) 961-5400
Fax: (757) 962-5979
rayhogge@virginialaborlaw.com